## DELAHOUSSAYE v. LANDRY.

Where an act of sale of a tract of unimproved land, made at a time when the cultivation of sugar was unknown in that part of the State where the land was situated, established a servitude in favor of the land sold on an adjoining tract, authorizing the purchaser "a prendre du bois pour l'utilité de son habitation sur &c., ce privilége restant attaché pour toujours à la dite terre", the purchaser will not be allowed, on subsequently commencing the cultivation and manufacture of sugar, to take from the land subject to the usufruct, wood to make his sugar. Per Curiam: The provision of the quantity of wood necessary for the manufacture of sugar could not have been contemplated by the parties, at the time; and were we to authorize the taking of that quantity, what was originally agreed to as an ordinary servitude, might destroy the value of the burthened estate.

APPEAL from the District Court of St. Martin, Overton, J. The facts of this case are stated in the opinion of the court.

Brent and Magill, for the plaintiff, cited 3 Toullier, nos. 8, 11, 17, 386, 422, 424, 469. Pardessus, nos. 6, 234, 236, 237, 238. Domat, b. 1, tit. 12, sec. 1,

Delahoussaye
v.
Landry.

no. 2. Code of 1808, Serv. art. 65. C. C. 749, 774. *Orleans Navigation Co.* v, *New Orleans*, 2 Mart. 25, 201.

*Simon*, for the appellant. Our Civil Code, art. 705, which is verbatim the same as art. 686 of the french code, says, in positive terms, that " the use and extent of servitudes established by contract, are regulated by the title by which they are granted." The same provision existed in the Civil Code of 1808, p. 138, art. 49 ; and the same rule is repeated in § 3 of art. 718, with regard to the right of passage, as established by law or by convention. Domat, l. 1, tit. 12, s. 1, § 8, says : " Le droit et l'usage d'une servitude se règle par le titre qui l'établit ; et elle a ses bornes et son étendue selon qu'il a été convenu, si le titre est une convention. Ainsi, celui à qui elle est due, et celui qui la doit, doivent s'en tenir au titre, soit pour la qualité de la servitude, ou pour les manieres dont l'un doit user, et l'autre souffrir." See also, § 13 and 19, and the same principle is also recognized by Toullier, v. 3, nos. 601, 602, and by Lesage, " Traité des Servitudes, v. 1, nos. 287, 302, 303, and 305. All these authorities recognize the doctrine that a servitude established by contract, *derives its whole force* from the stipulations contained in the written act, that its use and extent must be governed exclusively by the terms of the convention under which it was acquired, and that when those terms are clear and explicit, it cannot be restricted, modified or limited. Pardessus, in his Traité des Servitudes, no. 237, after having in divers preceding articles, examined in what manner the object or intention of the parties could be reached, when the terms of the contract are obscure, uncertain, or doubtful ; and after having, in no. 536, adopted the rule that in order to explain the intention of the parties, and " suppléer à l'incertitude que laisse le titre originaire," " l'état des lieux et la situation respective des parties à l'èpoque à laquelle la servitude a été établie doivent aussi servir à en déterminer l'étendue et le mode d'exécution," goes on to say, no. 237 : Mais ni l'intention des parties, ni l'usage, ni la position des lieux, ne pourraient l'émporter sur la lettre même des actes, parce que ce sont, conformement à l'art. 686 du Code, ces actes qui doivent servir de base." In no. 18, the same author, speaking of future advantages to be derived from a contract containing the grant of a servitude for the benefit of an estate not in existence at the time of the deed, says : Il ne faut pas toutefois induire que l'utilité ou l'agrément de l'héritage pour lequel la servitude est créra doivent exister présentement ; un propriétaire peut établir pour son hèritage des droits qui ne lui sont pas actuellement utiles, mais dont il est possible que l'avantage se fasse sentir un jour &c.; and he further expresses the opinion that a servitude may be acquired for the benefit of an estate which does not exist ; the object of the stipulation being a future advantage, " et l'intérêt futur n'est pas un motif moins déterminant qui l'intérêt présent." So it was in this case : the plantation did not exist at the date of the contract, it was to be subsequently established on the tract of land purchased, and the servitude was prospective in its operation, or rather in its object or end. See also ¶ 5, no. 56, in relation to conventional servitudes instituted by a title in which the stipulated right is indefinite or unlimited. I conceive this to be also applicable to this case, as, by the terms of the grant, the exercise of the right is indefinitely and indeterminately allowed for the utility (in general) of the defendant's plantation ; and as therefore the owner thereof is not limited to the taking of any particular number of cords of wood, provided such taking has for its object, and be conducive to, any profit which may be derived from the cultivation of the land.

The judgment of the court was pronounced by

Eustis, C. J. The defendant claims a servitude on the land of the plaintiff, in favor of a tract of land having ten arpents front by thirty two in depth, on the bayou Teche, purchased, in 1809, by him from *Louis Delahoussaye*, under whom the plaintiff also holds. The clause which gives rise to this controversy is in the following words : " It est convenu que *Joseph Landry* est dûment autorizé par ce present à prendre du bois *pour l'utilité de son habitation* sur la terre du dit sieur *Delahoussaye*, située au *grand bois*, ce privilége restant attaché pour toujours à la dite terre de dix arpents stipulée au present acte." At the time of sale the tract of land of the defendant was unsettled, and entirely uncultivated ; a short time afterwards it was occupied and established

as a cotton plantation. In 1829, or 1830, the defendant having converted his DELAHOUSSAYE
estate into a sugar plantation, considered that, under the stipulation above men- $v.$ LANDRY.
tioned he had a right to take his wood from the plaintiff's land for the purpose of
making his sugar, and took it accordingly· The object of this suit is to restrict
the defendant to what the plaintiff considers as a lawful exercise of this ser-
vitude. The district judge decided in favor of the plaintiff, and gave damages
against the defendant for an abuse of this servitude, and the defendant has ap-
pealed.

About the period of the defendant's purchase, cotton, corn, &c., were the
sole products of cultivation in the neighborhood. There was but one sugar
house in the whole parish, which was shortly after abandoned. The district
judge, in view of the situation of the land, and the condition of the country at the
remote period of the sale, was of opinion that the change in the culture of the
defendant, twenty years after the purchase, from cotton to sugar, would essen-
tially change and augment the burthen of the servitude, and that the provision
of the quantity of wood necessary for the manufacture of sugar from the lands
of the vendor, could not have been in the reasonable contemplation of the par-
ties at the time of making their contract; nor did the judge consider that, ac-
cording to the rules of law, for the interpretation of servitudes, the right claim-
ed by the defendant could be supported.

In this opinion of the judge we concur. At the time this servitude was cre-
ated, it was not onerous, and the estate affected could support it without deter-
ioration. Sugar was not then one of the staple products of the State. The
present wants of the plaintiff, for the new product of his land, increase many
fold, and may increase still more, the burthen; so that what was originally
within the province of the parties, agreed to as a common or ordinary servitude
may become a devastation, and destroy the value of the burthened estate. The
authorities adduced by counsel have been examined, and it is useless to repro-
duce them in this opinion, in which we confine ourselves to the result of our ex-
amination.

The district judge restricted the right of taking wood from the land of the
plaintiff to thirty-five cords of wood as the maximum per annum, that being the
number of cords of wood sufficient for fuel and rails for the use of the planta-
tion, under the evidence adduced. The appellant objects to this restriction as
in conflict with his servitude, and we are not prepared, under the information
tion before us, to render it perpetual.

The subject is one of great importance in this portion of the State particu-
larly, and we feel great reluctance in determining it without further lights. We
shall leave the extent of this servitude, as to the quantity of wood and what
wood is to be taken, open for further enquiry, and change the judgment appeal-
ed from in that particular. The parties themselves may perhaps render a fur-
ther examination of this subject by a court unnecessary.

The judgment appealed from is, therefore, reversed; and it is ordered that
the defendant be perpetually enjoined from cutting or taking from the plaintiff's
land wood for the purpose of making and manufacturing of sugar, and be con-
fined to the exercise of his servitude to the wood for the use of his plantation,
*pour l'utilité de son habitation ;* and that the plaintiff recover from the defend-
ant the sum of $212 with costs; the plaintiff paying the costs of this appeal,
without prejudice to other matters not included in this decree.